Dear Mr. Honeycutt:
Your request for an Attorney General's Opinion has been assigned to me for research and reply. On behalf of the Gravity Drainage District No. 1 of the Parish of Livingston ("Drainage District"), you have asked for our opinion concerning the legality of the proposed pledge by the Drainage District of the proceeds of its 0.5% sales and use tax within the Juban Crossing Community Development District ("Development District") to secure bonds issued by the Development District to finance certain drainage improvements within the Development District. Based upon the information provided to our office, we are of the opinion that the proposed transaction is acceptable.
Your request indicates that the Development District intends to issue several series of revenue bonds to finance certain infrastructure improvements within the Development District. A private entity shall thereafter construct a mixed-use development within the Development District, consisting of medical, commercial, retail and residential facilities. It is anticipated that such mixed-use development will generate significant property taxes and will provide substantial economic benefits within Livingston Parish.
One of the series of revenue bonds issued by the Development District will be specifically restricted to drainage improvements. These Development District Drainage Bonds will be secured by, among other things, the sales tax revenues generated from a tax proposition for various drainage purposes, approved by the voters within the Drainage District. Your request indicates that these sales tax revenues will only
be pledged by the Drainage District to secure the Development District Drainage Bonds, and will not be pledged by the Drainage District to secure bonds issued to finance other required infrastructure improvements within the Development District. Further, you indicate that upon payment in full of the Development District Revenue Bonds, the pledge by the Drainage District of the sales and use tax revenues will be terminated and released so that the tax revenues may then be used by the Drainage District in accordance with the tax proposition. *Page 2 
Since the proposed pledge involves proceeds derived from a special tax, it must be examined in light of La.Rev.Stat. 39:704, in addition to La.Rev.Stat. 38:1805. Louisiana Revised Statute 39:704, provides the following:
 § 704. Proceeds of special tax
 The proceeds of any special tax shall constitute a trust fund to be used exclusively for the objects and purposes for which the tax was levied. The records of the taxing authority shall clearly reflect the objects and purposes for which the proceeds of the tax are used.
While La.Rev.Stat. 38:1805 states the following:
 § 1805. Livingston Parish Gravity Drainage District No. 1; levy of sales and use tax; bonds
 A. Subject to the approval of a majority of the electors within the Livingston Parish Gravity Drainage District No. 1 at a special election called for the purpose, the police jury of Livingston Parish as the governing authority of the district is hereby authorized to levy a sales and use tax not exceeding three quarters of one percent within the district. The tax shall be imposed by ordinance of the police jury and shall be levied upon the sale at retail, the use, the lease or rental, the consumption, the distribution and storage for use or consumption, of tangible personal property, and upon the sales of services within the district, all as presently or hereafter defined in R.S. 47:301 through 317. This tax shall be in addition to all other taxes currently levied in Livingston Parish, and except where inapplicable, the procedure established by R.S. 47:301 through 317 shall be followed in the imposition, collection, and enforcement of the tax. Procedural details necessary to supplement the provisions of those sections and to make said provisions applicable to the tax herein authorized shall be fixed in the ordinance of the police jury imposing the tax.
 B. Before any tax is levied under the provisions of this Section, there shall be submitted to the qualified electors of the area within the district at a special election called for that purpose a proposition to authorize the imposition of the sales and use tax including the purpose, rate, and duration of the tax at an election to be conducted in accordance with the general election laws of the state of Louisiana, and a majority of those voting in the election shall have voted in favor of the proposition. In addition, the proposition may also include provisions authorizing the funding of the sales and use tax into negotiable bonds or certificates of *Page 3 
indebtedness payable solely from an irrevocable pledge and dedication of all or a portion of the proceeds of the tax subject to the prior payment of the costs and expenses of administration and collection of the tax.
 C. The proceeds of the tax authorized by and levied in accordance with the provisions of this Section shall be used exclusively to acquire drainage works; rights of way for canals and ditches; flood prevention works; equipment and facilities necessary to construct, maintain, and operate outlets for the waters of the district; and to prevent flooding.
 D. The district is further authorized to execute local service agreements with the governing authorities of municipalities located within the district which would provide that those municipalities would pay a portion of the cost of the drainage improvements. (Emphasis added).
Pursuant to La.Rev.Stat. 38:1805, you state that the following proposition was presented to the voters:
 "Proposition Gravity Drainage District No. 1 Summary: Renewal of twenty (20) year special tax of one-half (1/2) of one percent (0.5%) sales tax for the purpose of acquiring drainage works, rights-of-way for canals and ditches, flood prevention works, equipment and facilities necessary to construct, maintain, and operate outlets for the waters of the district, and prevent flooding."
After review of the above quoted tax proposition, as well as La.Rev.Stat. 38:1805, we believe the proposed pledge is in accord with the objects and purposes for which the 0.5% sales and use tax was levied. The language of the tax proposition is broad and further specifies the purposes for using the tax revenues.
The proposition, as well as La.Rev.Stat. 38:1805, specifically state that the tax proceeds shall be used exclusively to acquire drainage works, rights of way, flood prevention works, etc. You have indicated that the proceeds from the Development District Drainage Bonds, which are to be secured by the 0.5% sales and use tax revenues, are going to be used exclusively for the purposes enumerated in the above quoted proposition. As such, we believe the proposed pledge comports with both La.Rev.Stat. 38:1805, as well as La.Rev.Stat. 39:704.
Your request further indicates that the proposed pledge will be authorized by an ordinance which provides for the Drainage District to enter into a Cooperative Endeavor Agreement among the Drainage District, the Parish of Livingston, and the Development District. The proposed Cooperative Endeavor Agreement relates solely to road and drainage improvements within the Development District, and also provides for the *Page 4 
financial obligations of the Drainage District and other parties thereto in connection with such road and drainage improvements.
Louisiana Constitution Article VII, Section 14 provides the following, with respect to Cooperative Endeavor Agreements:
 "§ Section 14. (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. . . `
 * * * (C) Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual."
As quoted above, Paragraph (A) generally prohibits the loan, pledge, or donation of public funds. Paragraph (C) of Section 14 authorizes the state and its political subdivisions, to engage in cooperative endeavors for a public purpose with other governmental agencies, public or private associations and corporations and/or individuals. However, Paragraph (C) merely supplements the prohibition against donations contained in Paragraph (A). It does not create an exemption or exception from the general constitutional norm. In other words, the cooperative endeavor must meet the general standards for the non-gratuitous alienation of public funds established in Paragraph (A).
The Louisiana Supreme Court has recently announced a new standard for determining whether Art. VII, Sec. 14 is violated. In Board of Directorsof the Industrial Development Board of the City of Gonzales, Louisiana,Inc. v. All Taxpayers, Property Owners, Citizens of the City of Gonzales,938 So.2d 11, 23, 2005-2298 (La. 9/6/06) (the "Cabela's" case) the Court found that "(Art VII) § 14(A) is violated when public funds or property are gratuitously alienated."
In Cabela's, the Court looked at the intent of the public entities to conclude that the alienation of funds was non-gratuitous. The public entities demonstrated a non-gratuitous intent by showing that the project served a public purpose, that financial projections showed financial benefits to the entities exceeded the amount pledged, and that they had a reasonable expectation that the economic benefit from the project would exceed the obligations undertaken by the public entities. These factors alone were not enough to show a non-gratuitous intent on the part of the City and the State. However, when looking at these factors, along with the project and the related documents as a whole, the Court concluded that there was a non-gratuitous intent on behalf of the City *Page 5 
or the State. Basically, the Court looked at the transaction as a whole to see if it passed the "smell test".
We glean three things from the Cabela's case when it comes to determining whether an expenditure is gratuitous. First, it is evident that there must be a public purpose when expending funds. Second, the transaction must be looked at as a whole, and can't appear to be gratuitous on its face. Third, public entities must have an expectation of receiving something of value when expending public funds. TheCabela's decision doesn't make it clear exactly what that value is or how it is calculated. In Cabela's, the non-gratuitous intent of the public entities was demonstrated upon a showing by the entities that they expected to receive more than what they gave up. While the Court didn't state that such a showing was necessary, it did make it clear that such a showing was an important factor in its decision. Therefore, it is clear to our office that a public entity must receive more than a nominal return or some minimal value in order for an expenditure to be non-gratuitous. If a public entity can show that it reasonably expects to receive at least equivalent value for the funds it expends or property it transfers, that would seem to show a non-gratuitous intent.
Based upon the foregoing, it is the opinion of our office that in order for an expenditure or transfer of public funds or property to comply with Art. VII, Sec. 14(A), the public entity must show:
 1. A public purpose for the expenditure or transfer;
 2. That the expenditure or transfer, taken as a whole, does not appear to be gratuitous; and
 3. Evidence demonstrating that the public entity has a reasonable expectation of receiving a benefit or value at least equivalent to the amount expended or transferred.
In accord with this standard, we are of the opinion that the Drainage District has the requisite authority to pledge or otherwise expend the tax revenues in question. Furthermore, we believe the proposed expenditure is for a public purpose. We agree with your assessment that providing drainage services to residents of the Development District certainly qualifies as a public purpose. Additionally, in accord withCabela's, we believe the expenditure, taken as a whole, does not appear to be gratuitous and the Drainage District has a reasonable expectation of receiving something of proportionate value in exchange for its pledge.
Your request states that the mixed-use development is expected to provide significant economic benefits to the residents of Livingston Parish and the Drainage District for many years to come. Further, although the proposed Cooperative Endeavor Agreement relates to both road and drainage improvements, the proceeds from the Development District Drainage Bonds will be used for much needed drainage purposes within the *Page 6 
jurisdictional boundaries of the Drainage District only, and the potential economic impact will reasonably improve the quality of life of the residents of Livingston Parish. Thus, we believe the proposed financing plan is not merely gratuitous since all parties incur obligations and receive something of value. Taken as a whole, we believe the Drainage District has demonstrated its proposed pledge/expenditure is for a public purpose and it has a reasonable expectation of receiving a benefit or value at least equivalent to the amount expended or transferred. Accordingly, we believe the Drainage District may enter into a cooperative endeavor agreement with the Development District and Parish of Livingston, whereby the Drainage District agrees to pledge the proceeds of its 0.5% sales and use tax within the Development District to secure bonds issue by the Development District to finance certain drainage improvements within the Development District
We trust this adequately responds to your request. If you should have any additional questions, please feel free to contact our office.
 Yours very truly,
 CHARLES C. FOTI, JR.
 Attorney General
 BY:_________________________
 MICHAEL J. VALLAN
 Assistant Attorney General
 CCF, JR/MJV/crt